IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JAMES A. K.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No. 3:18-cv-00795-CL

OPINION AND ORDER

MARK D. CLARKE, Magistrate Judge.

Plaintiff James K. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administrations denying his claim for supplemental security income under Title XVI of the Social Security Act. For the reasons provided below, the Commissioner's decision is AFFIRMED.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.
[2] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

## BACKGROUND

Plaintiff was born October 5, 1990 and was twenty-three (23) when he filed his application for supplemental security income on July 3, 2014. Tr. 192. Plaintiff has an 11th grade education and did not obtain a GED. Tr. 70-71. Plaintiff does not have past relevant work experience and claims the only job he ever had was doing yard work for friends. Tr. 48-49. Plaintiff occasionally uses marijuana and methamphetamine (Tr. 47), and has a history of homelessness and prostitution (Tr. 589). Plaintiff was put into foster care at age five and remained in the foster care system for the remainder of his childhood. Tr. 294, 483. There are some discrepancies in the record, but it appears that Plaintiff remained with one foster family for at least eight years before being transferred to a different foster care facility after a psychiatric hospital admission. Tr. 294.

Plaintiff alleges disability due to mental, emotional, and behavioral limitations. In his application, Plaintiff alleges disability began on October 5, 2006 (Tr. 192), but claims in his brief that he received child SSI benefits up until May 9, 2011. Plf.'s Br. at 1 (#15). Two hearings concerning Plaintiff's disability application were held in Portland, Oregon. Tr. 23. At the first hearing, Plaintiff amended his alleged onset date to May 9, 2011 at the advice of his attorney. *Id.* Plaintiff testified by phone at the first hearing because he was incarcerated in the Clackamas County Jail on a misdemeanor assault conviction for assaulting his girlfriend. *Id.* The hearing was continued to allow Plaintiff an opportunity to testify in person. *Id.* A second hearing was held on November 22, 2016. *Id.* On February 14, 2017, Administrative Law Judge ("ALJ") Campbell issued a decision finding Plaintiff not disabled. Tr. 23-35. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1.

# DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

> a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since March 12, 2014, the application date. Tr. 25.

2. Plaintiff has the following severe impairments: depressive disorder, borderline intellectual functioning, personality disorder, posttraumatic stress disorder, and polysubstance abuse. Tr. 25.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 26.

    a. Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: He can do simple routine work with occasional contact with supervisors and coworkers, but no public contact. Tr. 28.

4. Transferability of job skills in not an issue because Plaintiff does not have past relevant work. Tr. 33.

5. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 33.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 34.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53

F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to consider Listing 12.05(c) (intellectual disorder); and (2) fully adopting Dr. Ju's medical opinion and then silently omitting part of the opinion from Plaintiff's RFC.

### I. Plaintiff has not met his burden to prove that he meets the criteria of Listing 12.05.

The Social Security Regulations' Listing of Impairments (the "Listings") is "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A claimant's impairment or combination of impairments is medically equivalent to a listed impairment—establishing a disability and ending the five-step inquiry—if the claimant's impairment or combination of impairments "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

Plaintiff argues the ALJ erred at step three of the sequential evaluation by failing to consider Listing 12.05(c), which is a mental disorder listing. On September 26, 2016, the Commissioner published final rules revising the mental disorders listings. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016). The listing at issue was amended effective January 17, 2017. *Id.* Because the ALJ's decision was issued on February 14, 2017, the amended listing applies to this case, as opposed to the previous version relied on in Plaintiff's opening brief. The amended Listing criteria for intellectual disorder states:

12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:

A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

   d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016).

Here, the ALJ considered Listings 12.02, 12.04, 12.06, 12.08, 12.11, and 12.15, but did not mention 12.05. Tr. 26. Failing to mention 12.05 is not clear error because the Ninth Circuit

has repeatedly held "[i]t is unnecessary to require the Secretary [or an ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Moreover, Plaintiff bears the burden of proof at step three. *See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). Therefore, in order for this Court to assign harmful error to the ALJ's failure to consider Listing 12.05, Plaintiff is required to show that his impairments meet or medically equal "all of the specified medical criteria" of Listing 12.05. *See Zebley*, 493 U.S. at 530.

Unfortunately, Plaintiff relied on the previous criteria for Listing 12.05 in his Opening Brief and did not revisit this argument in his Reply, even after the Commissioner pointed out that Plaintiff's reliance on the previous version of Listing 12.05 was misplaced. That alone would be enough for this Court to conclude that Plaintiff failed to meet his burden to prove all the elements of Listing 12.05. Additionally, evidence from the relevant time period establish full scale IQ scores that exceed the levels required in the criteria of Listing 12.05. Listing 12.05(B) requires a full scale IQ score of 70 or below, or a full scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below. 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016). Plaintiff relies on test results from March 14, 2007, showing a full scale IQ score of 68, to argue that he meets the Listing. Tr. 485. However, not only is 2007 before the relevant time period, but Plaintiff underwent additional testing shortly thereafter that resulted in full scare IQ scores above the Listing range. On May 16, 2007, test results showed that he had a full scale IQ score of 79. Tr. 291. Almost a year later, on April 3, 2008, test results showed that he had a full scale IQ score of 77. Tr. 296. More importantly, the only IQ examination performed during the relevant time period resulted in a full scale IQ score of 77. Tr. 585 (2016 examination). Although the doctor notes that Plaintiff's full scale IQ score is not the best

descriptor of his overall level of intellectual functioning because it is elevated by his average-range perceptual reasoning score of 109, this note does not change the fact that his full scale IQ score falls outside the range required under Listing 12.05.

Finally, Plaintiff has not shown that his impairments cause significant deficits in adaptive functioning as required to meet the criteria of Listing 12.05(B)(2). The ALJ found that Plaintiff's combined impairments resulted in no more than mild limitation in the broad functional areas of understanding, remembering, applying information, and adapting or managing oneself. Tr. 26-27. The ALJ found no more than moderate limitation in the areas of interacting with others, concentrating, persisting, or maintaining pace. Tr. 27. Plaintiff failed to challenge these findings or even address why the Court should find he meets Listing 12.05 despite these findings. Therefore, Plaintiff has failed to carry his burden to prove that he meets the criteria of Listing 12.05.

## II. The ALJ's RFC determination is consistent with Dr. Ju's medical opinion.

Plaintiff does not contest the ALJ's finding that Dr. Ju's opinion was entitled to great weight. Rather, Plaintiff argues the ALJ erred because Dr. Ju stated Plaintiff required a "non-confrontational, supportive approach to supervision," and the ALJ did not incorporate that statement into the RFC determination. Plf.'s Br. at 7-8. However, the limitations listed in the RFC determination need only be consistent with, rather than identical to, the limitations identified by a physician. *Linden v. Berryhill*, 736 Fed. Appx. 684, 686 (9th Cir. 2018) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)).

Here, non-examining psychologist Winifred Ju, Ph.D., reviewed Plaintiff's medical history and completed an RFC questionnaire. Tr. 101-02. When asked to explain Plaintiff's social interaction capacities or limitations, Dr. Ju wrote that Plaintiff "is uneasy around large

groups of people. He is restricted to no more than occasional, indirect public contact and no more than required group co-worker interaction. Requires a non-confrontational, supportive approach to supervision." Tr. 102. The ALJ gave Dr. Ju's opinion "great weight" and limited Plaintiff to "simple routine work with occasional contact with supervisors and coworkers, but no public contact." Tr. 28. Limiting Plaintiff in this way with occasional contact with supervisors is a reasonable incorporation of Dr. Ju's findings.

Moreover, the Court agrees with the Commissioner's assertion that Dr. Ju's note about the need for a "non-confrontational, supportive approach to supervision" is not a clear functional limitation. Plaintiff asserts that Dr. Ju's note should be interpreted to mean that Plaintiff is limited to "special supervision," which exists in only sheltered workshops. However, Plaintiff's argument simply confirms that Dr. Ju's note is open to more than one interpretation. Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). Moreover, when Dr. Ju's note is read in the context of her full opinion, it is clear that Dr. Ju found Plaintiff capable of simple routine sustained work activities, which is consistent with the ALJ's RFC determination.

Finally, Plaintiff asserts that the ALJ was required to present Dr. Ju's note about supervision to the vocational expert at the hearing. Review of the hearing transcript shows that the ALJ asked reasonable follow-up questions about supervision to the vocational expert. First, the ALJ asked,

> If someone could have no over the shoulder type supervision. Maybe a daily check for quality of work and attendance, no contact with coworkers although they can be in the vicinity. No teamwork collaboration. No public contact. Would the jobs that you named in Hypo One fit that?
> A: Yes, Your Honor.

Tr. 56. Next, the ALJ asked,

> If someone required a job coaching after the first 30 days of work to get through and learn the job and then to also help with getting to work on time and also to follow work instructions and things like that, would that be allowed in competitive work?
> A: No, Your Honor.

Tr. 57. As a follow-up question, Plaintiff's attorney asked the vocational expert how he would describe "job coaching." The vocational expert replied that job coaching was when "[a] person stands next to you and tells you what to do and how to do it." Tr. 57. The vocational expert confirmed that such job coaching would not be allowed in competitive work. *Id.* These questions show that the ALJ adequately considered Dr. Ju's note about supervision and asked appropriate questions to determine what levels of supervision would be allowed in competitive work. The Court has found no authority that requires the ALJ to read verbatim to the vocational expert all notes made by physicians. Therefore, because the limitations listed in the RFC are consistent with the limitations identified by Dr. Ju, the Court finds no harmful error.

## ORDER

Based on the foregoing, the decision of the Commissioner denying Plaintiff's claim for supplemental security income is AFFIRMED.

IT IS SO ORDERED.

DATED this 5 day of November, 2019.

MARK D. CLARKE
United States Magistrate Judge